UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATELEY ASSOCIATES LLC | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. |
| v. | : | |
| | : | |
| PITNEY BOWES, INC. | : | |
| | : | |
| Defendant. | : | OCTOBER 20, 2008 |

## COMPLAINT

### PARTIES

1.      Plaintiff Pateley Associates LLC ("Pateley") is a Connecticut limited liability company with an office at c/o Greyhawke Capital Advisors LLC, at 340 Pemberwick Road, Greenwich, Connecticut 06831.  Pateley is a Member and Member Manager of Pateley Associates LLC, a Delaware limited liability company and is qualified to do business in Connecticut under the name of Pateley Associates I LLC.  Pateley is the former owner of an estate in years and the current lessor of certain real property and owner of improvements located at 23 Barry Place in Stamford, Connecticut (the "Facility").

2.      Defendant Pitney Bowes, Inc. ("Defendant") is a Delaware corporation having an office at One Elmcroft Road, Stamford, Connecticut 06926-0700.  Defendant is the former owner and operator, and current lessee and operator, of the Facility.

JURISDICTION

3.      This action arises under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§9601 et seq., and under Connecticut statutory and common law.

4.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action because it arises under the laws of the United States.

5.      Venue is proper in the District of Connecticut because, pursuant to 42 U.S.C. § 9613(b), it is in the district in which the damage complained of by Pateley occurred and because, pursuant to 28 U.S.C. § 1391(b), the property that is the subject of this action is situated within this District and a substantial part of the events or omissions giving rise to these claims occurred in this District.

6.      This Court has supplemental jurisdiction over claims of Pateley under the laws of Connecticut pursuant to 28 U.S.C. § 1367.

ALLEGATIONS COMMON TO ALL COUNTS

7.      Defendant was the owner of the Facility in or about 1967 until on or about December 1, 1978, at which time Defendant sold the buildings set upon the Facility and an estate in years in the Facility to Pateley.  At the same time, Defendant sold the remainder interest in fee to the predecessor in interest of Whisper Capital, LLC ("Whisper Capital").

8.      On or about December 1, 1978, Pateley as Lessor and owner of an estate in years and Defendant as Lessee entered into a Lease Agreement (the "Lease") for the buildings and land at the Facility.

9.      Also on or about December 1, 1978, Pateley negotiated an option to enter into a Ground Lease with the predecessor in interest of Whisper Capital.

10.     On or about January 2, 2004, the Ground Lease was entered into by Whisper Capital as Lessor and Pateley as Lessee.  Pateley continues as the owner of the buildings and improvements at the Facility.

11.     Defendant has occupied the Facility exclusively since in or about 1967.

12.     Environmental investigation ("investigation") of the Facility began in or about 2005 after polychlorinated biphenyl ("PCB") impacted sediment was encountered in a pond at an adjacent golf course, the Innis Arden Golf Club.

13.     The investigation, to date, has detected PCB contamination in soil at the Facility at concentrations ranging up to 10,400 mg/kg.  The concentration of PCB contamination in some soil samples significantly exceeds the Connecticut Remediation Standard Regulations, RCSA § 22a-133k-1 *et. seq*. ("RSR Criteria"), and the concentration triggers certain responses in accordance with the Toxic Substances Control Act, 40 C.F.R. Part 761 ("TSCA").

14.     Volatile organic compounds ("VOCs"), semi-volatile organic compounds ("SVOCs"), extractable total petroleum hydrocarbons ("ETPH") and metals, including but not limited to trichloroethylene ("TCE"), arsenic, vinyl chloride, phenanthrene, and cadmium, have been detected in soil and/or groundwater at the Facility, some at concentrations exceeding the RSR criteria.

15.     In or about 1988 and 1989, as required by the Connecticut Underground Storage Tank Regulations, RCSA §§ 22a-449(d)-1 and 101-113, Defendant removed certain Underground Storage Tanks ("USTs") at the Facility that previously contained gasoline, alcohol, nail polish remover and fuel oil.  Defendant failed to comply with the Underground Storage Tank Regulations, however, because impacted soil and groundwater were not fully remediated at locations where Defendant removed tanks.

16.    Contamination has been detected in soil samples from the Facility in the form of VOCs and metals at the site of several existing and former USTs.

17.    Up to 62,000 milligrams per kilogram of total petroleum hydrocarbons were detected in one soil sample at or near the site of a former UST at the Facility.

18.    Vinyl chloride has been detected in the groundwater at or near the site of several existing and former USTs in concentrations exceeding the RSR criteria.

19.    Underground piping, dispenser and pipe trenches at the Facility associated with former nail polish remover, gasoline and fuel oil tanks have been identified as the source of potential releases including, but not limited, to release of VOCs.

20.    Stained soil and VOC impacted soil, as well as groundwater contaminated by VOCs and SVOCs, have been detected beneath four former Aboveground Storage Tanks ("ASTs") at the Facility.

21.    VOCs, SVOCs and metals have been detected in one or more soil or fill samples taken from areas of reported or documented filling at the Facility.

22.    Stained soil and impacts by VOCs, petroleum and metals have been detected in areas at the Facility where former manufacturing activities occurred and/or adjacent to various buildings.  Petroleum hydrocarbons and arsenic are present at concentrations exceeding the RSR criteria.  Groundwater testing in the described areas revealed contamination by VOCs and metals, some at levels above RSR criteria.

23.    Further investigation of the Facility is necessary to determine the extent, nature and sources of contamination, and to determine the extent of remediation required to comply with the applicable federal and state environmental requirements.

24.    Defendant currently occupies the Facility pursuant to the terms of the Lease between Pateley, as landlord, and Defendant, as tenant, as amended by (i) that certain Lease

Amendment Agreement, dated as of December 19, 1978, (ii) that certain Amendment to Lease Agreement, dated as of August 1, 2001, and (iii) that certain Second Amendment to Lease, dated as of June 11, 2008 (as so amended, the "Lease").

25.     Pursuant to Section 5 of the Lease entered into by Defendant and Pateley, the Lease is a "net lease," which imposes upon Defendant all costs and obligations of every kind relating to the Facility as though it were the sole owner.

26.     Pursuant to Section 5 of the Lease entered into by Defendant and Pateley, the Lease is a "hell or high water bond net lease" that generally puts the burdens of ownership on the Lessee.

27.     Pursuant to Section 5 of the Lease, Defendant is obligated to pay rent notwithstanding any "prohibition, limitation, restriction or prevention of Lessee's use ..."

28.     As set forth in Schedule B of the Lease, the Facility is leased to Defendant for an Initial Term identified as December 13, 1978 to December 31, 1978 and a twenty-five (25) year Primary Term identified as January 1, 1979 to December 31, 2003.  The Defendant may also exercise certain options to renew, extending the total term to fifty-five (55) years.

29.     Defendant exercised the first option to extend the Lease.  By its terms, the Lease will expire on February 28, 2009.

30.     Pursuant to Section 3 of the Lease, the Lease admits no rights in Pateley to determine how the Facility is used.  Defendant may use the Facility for any lawful purpose.

31.     Pursuant to Section 18 of the Lease, Pateley is not permitted to terminate the Lease before it expires unless Defendant is in default of the Lease.

32.     Pursuant to the terms of the Lease, Pateley has not reserved the right to use the Facility for any reason.

33.     Pursuant to Section 16 of the Lease, Defendant has the right to sublet and assign all or some of the Facility without notifying or obtaining permission from the Lessor, so long as the Lessor's power or rights are not modified.  The Lease contains no limitations as to whom the Lessee may sublease.

34.     Pursuant to the terms of the Lease, Defendant is responsible for payment of all taxes, assessments, insurance, and operation and maintenance costs.

35.     Pursuant to Section 12 of the Lease, Defendant is responsible for maintaining insurance on the Facility.

36.     Pursuant to Section 12 of the Lease, Defendant must name Pateley as an additional insured on all insurance policies relating to the Facility.

37.     Pursuant to Section 6 of the Lease, Defendant is responsible for paying "all taxes, assessments, levies, fees, water and sewer rents and charges, and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are, at any time prior to or during the Initial, Primary or any Extended Term hereof, imposed or levied upon or assessed."

38.     Pursuant to Section 6 of the Lease, Defendant is responsible for all utilities servicing the Facility.

39.     Pursuant to Section 9 of the Lease, Defendant is responsible for performing all maintenance, including structural and non-structural.  Pateley has no obligation to maintain, repair or rebuild all or any part of the Facility.

40.     Pursuant to Section 10 of the Lease, Defendant is permitted to make additions or alterations to the Facility without the consent of Pateley provided that such changes do not materially lessen the market value of the Facility, and that improvements of a value in excess of $50,000.00 are not to be demolished in the process.  Defendant is not required to obtain

written permission for such additions or alterations and, in fact, Defendant has made substantial alterations to the buildings over the thirty years that it has leased the Facility.

41.     Pursuant to Section 6(b) of the Lease, Defendant is responsible for causing the Facility to comply with all governmental rules, orders and determinations, as well as with all agreements and restrictions applicable to the Facility.

42.     Pursuant to Section 8 of the Lease, Defendant is obligated to pay, protect, indemnify and save Pateley harmless against all liabilities, losses, damages, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands, or judgments of any nature "to which Lessor is subject because of its estate in the Premises."

43.     Innis Arden Golf Club has commenced a lawsuit in the United States District Court for the District of Connecticut entitled *Innis Arden Golf Club v. Pitney Bowes, Inc., et al.*, No. 3:06 CV 01352 (lBA) (the "Innis Arden Lawsuit") against, among others, Pateley and the Defendant, asserting, among other things, that PCB contamination at Innis Arden Golf Club ("IAGC") is alleged to have originated from the Facility.

44.     In the Innis Arden Lawsuit, it is alleged that the IAGC's property was contaminated by a release of hazardous substances which occurred at the Facility, and by PCBs which emanated from the Facility.

45.     Pateley has never been in possession of the Facility.

46.     Pursuant to the terms of the Lease and at its sole cost and expense, the Defendant agreed to defend, protect, indemnify, release and hold harmless Pateley against any/or all liabilities, monetary or otherwise, that Pateley would otherwise incur with respect to the contamination of the IAGC property.

47.     The Defendant has failed to defend, protect, indemnify, release and hold harmless Pateley against any/or all liabilities, monetary or otherwise, that Pateley would incur

with respect to the investigation, remediation and monitoring of the environmental conditions at the Facility at issue in this matter.

48.     The soil and groundwater at the Facility is contaminated as a result of the operations conducted at the Facility by the Defendant during its control and occupancy of the Facility.  Also, Defendant has continued to maintain contamination caused as a result of the operations conducted at the Facility by former owners and/or operators of the Facility.

49.     Pateley has no adequate remedy at law and will suffer irreparable harm if an injunction is not issued ordering the Defendant to perform the environmental investigation and remediation at the Facility.

COUNT ONE:          CERCLA Cost Recovery

1-49.   Pateley realleges Paragraphs 1-49 as if fully set forth herein.

50.     Defendant is a "person" as defined in CERCLA, 42 U.S.C. § 9601(21).

51.     The Facility was and is a "facility" as defined in CERCLA, 42 U.S.C. § 9601(9).

52.     Defendant is an "operator" of the Facility as defined in CERCLA, 42 U.S.C. § 9601(20).

53.     Defendant is also an "owner" of the Facility as defined in CERCLA, 42 U.S.C. § 9601(20) since it retains so many of the indicia of ownership that it is the *de facto* owner.

54.     Some or all of the contaminants found at the Facility are "hazardous substances" as defined in CERCLA, 42 U.S.C. § 9601(14).

55.     Prior to Pateley and/or Whisper Capital's legal ownership of the Facility, there was a "release" of "hazardous substances" on and under the Facility and there remains a release and the threat of a "release" into the environment as defined in CERCLA, 42 U.S.C.

§§ 9601(22) and 9607(a).

56.     As a result of the conduct of Defendant in its ownership and operation of the Facility, there has been an additional "release" of "hazardous substances" on and under the Facility and there remains the threat of a "release" into the environment as defined in CERCLA, 42 U.S.C. §§ 9601(22) and 9607(a).

57.     Pateley has incurred and in the future will incur "costs of response" as defined in CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a).

58.     The response costs incurred and to be incurred by Pateley are necessary and consistent with the National Contingency Plan, 40 C.F.R. §§ 300 *et seq.*

59.     Pursuant to CERCLA, Defendant is liable to Pateley for past and future costs of response.

60.     Defendant's liability is not limited to costs attributable to releases caused during the time period in which Defendant has been an owner and/or operator of the Facility, but includes costs attributable to releases that occurred prior to the Defendant's possession of the Facility that Defendant has maintained throughout its exclusive possession of the Facility.

COUNT TWO:        Breach of Contract: Damages

1-49.   Pateley realleges paragraphs 1-49 above as if fully set forth herein.

50.     Pateley has performed all material conditions of the Lease and provided all necessary consideration therefor.

51.     Defendant failed to perform its contractual obligations to Pateley such that it has failed to comply with and cause the Facility to comply with all laws and other governmental rules pursuant to the terms and conditions of the Lease, and failed to pay, protect, indemnify and save Pateley harmless against all liabilities "to which Lessor is subject

-9-

because of its estate in the Premises." Moreover, to the extent that Defendant's actions have resulted in contamination, Defendant has failed to perform its contractual obligations by using the Facility for a lawful purpose.

52.     As a result of the Defendant's breaches, Pateley, as the holder of the estate in years and Ground Lessee, has been damaged as it has incurred liability for costs relating to evaluation of the environmental conditions at the Facility and remediation of such conditions, as well as diminished value of the Facility and lost opportunities to re-develop or market the Facility because of the environmental conditions.

COUNT THREE:     Breach of Contract: Indemnification

1-49.   Pateley realleges paragraphs 1-49 above as if fully set forth herein.

50.     As a result of the contamination at the Facility, a claim has been brought against Pateley by IAGC, a third party.

51.     Defendant has recognized its obligation under Section 8 of the Lease to indemnify Pateley by defending Pateley in the Innis Arden Lawsuit.  However, Defendant has failed and refused to remediate the contamination at the Facility.

52.     Whisper Capital LLC has also issued a demand to Pateley for continuation and completion of investigation and remediation of certain environmental conditions at the Facility.

53.     As a result of the contamination on the Facility that has been caused and/or maintained by the Defendant, Pateley, as the holder of the estate in years and Ground Lessee, has incurred liability, including liability to Whisper Capital, for costs relating to the evaluation of the environmental conditions at the Facility and remediation of such conditions.

54.     Defendant has failed and refused to remediate the Facility and has failed and refused to indemnify or to pay damages incurred by Pateley in connection with investigation and remediation of the environmental conditions at the Facility.

55.     Pateley has been harmed by Defendant's described failure and refusal.

COUNT FOUR:        Connecticut General Statutes § 22a-16: Declaratory/Injunction of Relief

1-49.   Pateley realleges Paragraphs 1-49 above as if set forth fully herein.

50.     The soil, groundwater and/or surface water at, under and around the Facility are natural resources of the State of Connecticut.

51.     Defendant's activities at the Facility have resulted in soil and/or groundwater contamination or maintenance of pre-existing soil and/or groundwater contamination at levels that exceed standards established by the State of Connecticut and the United States Environmental Protection Agency.

52.     Defendant's activities have or are reasonably likely to cause the unreasonable pollution of the natural resources of the State.

53.     Plaintiff is entitled to declaratory and injunctive relief as follows:

        a.  A declaration that the Defendant is obligated to remediate the Facility to meet the applicable criteria of the RSRs, the National Contingency Plan, 40 C.F.R. §§ 300 et seq., and the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq. ("TSCA"), and as may be required to satisfy other applicable state and federal laws and regulations; and

        b.  Injunctive relief requiring the Defendant to remediate the Facility to meet the applicable criteria of the RSRs, the National Contingency Plan, 40 C.F.R. §§ 300 et seq., and the TSCA, and as may be required to satisfy

-11-

other applicable state and federal laws and regulations.

54.     Plaintiff is entitled to litigation costs from the Defendant, including expert witness and reasonable attorneys' fees pursuant to C.G.S. § 22a-18(e).

COUNT FIVE:        Breach of Contract, CERCLA, C.G.S. § 22a-16: Declaratory Relief

1-49.   Pateley realleges paragraphs 1-49 and Counts One through Four above as if fully set forth herein.

50.     The level of contamination in the soil and groundwater at and under the Facility as a result of the conduct of the Defendant exceeds allowable limits as established by the RSRs and the United States Environmental Protection Agency.

51.     An actual controversy exists between Pateley and Defendant in that Pateley contends that the Defendant has obligations and legal liabilities under the Lease, under CERCLA, 42 U.S.C. § 9601 et seq. and under C.G.S. §22a-16, for such costs as have been or will be incurred for activities performed in the investigation, remediation and monitoring of hazardous substance contamination at the Facility.

52.     Absent judicial determination setting forth the parties' rights and obligations with respect to these costs and legal liabilities, a multiplicity of actions may result. Pateley, therefore, requests a judicial determination of the rights and obligations of the parties with regard to the Lease, CERCLA, 42 U.S.C. § 9601 et seq. and C.G.S. § 22a-16, as well as a determination of the responsibilities of the parties regarding hazardous substance contamination.

53.     The Plaintiff is entitled to declaratory relief as follows:

        a.     A declaration that the Defendant is obligated to remediate the Facility in compliance with the RSRs, the National Contingency Plan, 40 C.F.R.

-12-

§§ 300 *et seq.*, and the TSCA, and as may be required to satisfy other applicable state and federal laws and regulations, and

b.  A declaration that the Defendant is obligated to indemnify Pateley for all future costs associated with further investigation, remediation and monitoring of the Facility.

CLAIM FOR RELIEF

WHEREFORE, the Plaintiff, Pateley Associates LLC prays for judgment against Defendant as follows:

1.      A judgment pursuant to CERCLA §107 declaring the Defendant liable for all past and future response costs incurred by Pateley.

2.      An order directing the Defendant to perform such environmental investigation and remediation at the Facility to meet the applicable criteria of the RSRs, National Contingency Plan, 40 C.F.R. §§ 300 *et seq.,* and the United States Environmental Toxic Substances Control Act, 15 U.S.C. §2601 *et seq.* ("TSCA"), and as may be required to satisfy DEP regulations and to obtain a certification from a DEP or Licensed Environmental Professional ("LEP") that no further remediation is necessary.

3.      An order pursuant to Conn. Gen. Stat. §22a-18 requiring the Defendant to take action to remediate the Facility.

4.      Costs that Pateley has incurred for the investigation, remediation and monitoring of contamination at the Facility.

5.      An order for a declaratory judgment for all future costs of the investigation, remediation and monitoring of contamination at the Facility.

6.      Injunctive relief requiring the Defendant to remediate the Facility to meet the applicable criteria of the RSRs, the National Contingency Plan, 40 C.F.R.  §§ 300 *et seq.*, and TSCA, and as may be required to satisfy state and federal regulations.

7.      Injunctive relief requiring the Defendant to remediate the Facility on a timetable to be set by the Court that accommodates Pateley's plans to market and/or redevelop the Facility.

8.      Injunctive relief requiring the Defendant to comply with and cause the Facility

-14-

to comply with all laws and other governmental rules pursuant to the terms of the Lease; and

9.      Injunctive relief requiring the Defendant to use the Facility only for lawful purposes.

10.     Monetary damages.

11.     Costs, fees, and attorneys' fees.

12.     Any other relief this court deems appropriate.

JURY DEMAND

Plaintiff demands trial by jury of all issues so triable.

PLAINTIFF - PATELEY ASSOCIATES LLC

By

Francis J. Brady — ct04296
fbrady@murthalaw.com

Mark R. Sussman - ct05975
msussman@murthalaw.com

Sarah P. Kowalczyk - ct27006
skowalczyk@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  (860) 240-6000
Facsimile:  (860) 240-6150
Its Attorneys